UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
DANNY REYNOSO,

                      Plaintiff,

- against -

POSTMASTER GENERAL LOUIS DEJOY,

                      Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-6237 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Danny Reynoso ("Plaintiff"), proceeding *pro se*, brings this employment discrimination action against Postmaster General Louis DeJoy ("Defendant").[1] Liberally construing the Amended Complaint, Plaintiff brings claims for disparate treatment, hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as well as a state law defamation claim. On July 8, 2024, Defendant filed a motion to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6), respectively. For the reasons discussed below, the Court grants Defendant's motion in its entirety and dismisses all of Plaintiff's claims.

---

[1] The Postmaster General is the Chief Executive Officer of the United States Postal Service ("USPS"). 39 U.S.C. § 203.

## BACKGROUND

I.     **Factual Background**[2]

      A.     **Plaintiff's Tenure at USPS St. Albans Station**

Plaintiff has been employed as a Regular City Carrier for the USPS out of the St. Albans Post Office (also known as "St. Albans Station") since September 1, 2018.[3] (Am. Compl., Dkt. 10 at ECF[4] 10.) He was the only Hispanic mail carrier stationed at the St. Albans Station and alleges that he was treated differently as such. (Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), Dkt. 29 at 4.)[5]

Because Plaintiff's assigned route was long "and the parcel volume was intense," Plaintiff had difficulty delivering all of the mail on his route in the allotted time. (Am. Compl., Dkt. 10 at ECF 10–11.) Between September and December of 2018, Plaintiff made numerous complaints to USPS supervisors that it was impossible to complete his route in the allotted time and requested either overtime or support from another mail carrier. (*See id.* at ECF 10–12.) Some of these

---

[2] For purposes of Defendant's motion, the Court accepts as true all non-conclusory factual allegations in Plaintiff's Amended Complaint. *See Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001). In addition, because Plaintiff is proceeding *pro se*, the Court can also consider factual allegations made in his opposition to Defendant's motion. *See Rodriguez v. Rodriguez*, No. 10-CV-891 (LGS), 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) ("[W]hen analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings.").

[3] It is unclear when Plaintiff's employment with the USPS first began. (*See generally* Am. Compl., Dkt. 10.)

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[5] In addition to the allegations set forth in more detail below, Plaintiff also alleges that he was harassed "in the office and on the street," that mail was thrown on his workstation desk, and that his request for leave under the Family and Medical Leave Act was denied, among other instances described in more detail below. (Pl.'s Opp'n, Dkt. 29 at 4.)

requests were made verbally, others were made by submitting a form known as a "3996 form." (*Id.*)  On some occasions, Plaintiff's requests were granted.  (*See id.* at ECF 10 (alleging that on September 13, 2018, Plaintiff "was provided with 2 hour assistance" and authorization to take the time he needed to complete the route); *id.* at ECF 12 (alleging that Plaintiff received permission to work overtime on December 4, 2018).)  Other times, however, Plaintiff's requests were not granted and he was issued a "Notice of Removal,"[6]—that is, he was threatened with termination, which Plaintiff only prevented by filing a union grievance.  (*See id.* at ECF 10–11; *see also* 10/12/2018 Not. of Removal, Dkt. 10 at ECF 17–18.)  In addition, Plaintiff alleges that he was wrongfully placed on off-duty status without pay on October 29, 2018.  (Am. Compl., Dkt. 10 at ECF 11; *see also id.* at ECF 20–21 (Off-Duty Status Letter).)  The day he returned from being off-duty, he received another disciplinary infraction.  (*Id.* at ECF 11.)  Plaintiff alleges that other mail carriers who were non-Hispanic committed the same infractions as he did but were treated more favorably.  (Pl.'s Opp'n, Dkt. 29 at 15, 20.)[7]

When Plaintiff returned from his route on December 4, 2018, one of the days he received permission to work overtime, Supervisor Avalon Cadette ("Cadette") was in the post office.  (Am. Compl., Dkt. 10 at ECF 12.)  When Cadette saw Plaintiff finishing up his duties, she shouted at him: "Get off my clock right now! Did you not hear me? Am I speaking Spanish? I know I'm not speaking [S]panish!" (*Id.*)  Plaintiff found this comment to be discriminatory and offensive.  (*Id.*)

---

[6] Plaintiff received Notices of Removal related to his purported failure to timely complete his route on October 12, 2018, November 15, 2018, and December 11, 2018.  (Am. Compl., Dkt. 10 at ECF 10–11; 10/12/2018 Not. of Removal, Dkt. 10 at ECF 17–18.)

[7] Neither in his Amended Complaint nor his opposition does Plaintiff specifically identify any non-Hispanic USPS employees who were treated more favorably.  (*See generally* Am. Compl., Dkt. 10; Pl.'s Opp'n, Dkt. 29.)

3

Cadette stated that she was uncomfortable being alone with Plaintiff, though it is unclear when she made this second remark.  (Pl.'s Opp'n, Dkt. 29 at 17).

On December 14, 2018, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging race and/or national origin-based discrimination.[8] (Am. Compl., Dkt. 10 at ECF 12.)  The EEOC then began an investigation, which ultimately resulted in no finding of discrimination or retaliation.  (*Id.*; *see also* EEOC Decision & Order on Summ. J., Dkt. 27-6.)  Plaintiff appealed the EEOC's denial of his claims, and the EEOC affirmed the denial on appeal. (EEOC Appeal Decision, Dkt. 27-7 at 5.)

After Plaintiff contacted the EEOC, his supervisors continued to mistreat him.  (Am. Compl., Dkt. 10 at ECF 13.)  On February 8, 2019, one of his supervisors made a comment on the workroom floor about Plaintiff "crying for [his] job" when telling her "about [his] mother's cancer."  (*Id.*)  Plaintiff contacted the EEOC about this comment as well.  (*Id.*)  About a week later, Cadette "loudly project[ed] her voice towards [him]" and "demanded" that he unload his postal truck.  (*Id.*)  In addition, Cadette "harass[ed Plaintiff] throughout the station," including "following [him] to the restroom and waiting for [him] outside."  (*Id.*)  A few days after that, on February 22, 2019, Plaintiff was issued a disciplinary notice for not appearing for overtime on a day when he had a scheduled dental appointment.  (*Id.* at ECF 12–14.)

In February 2019, a new manager, Darius Evans ("Evans"), took over as St. Albans Acting Manager for Customer Service.  (*Id.* at ECF 14.)  Evans micromanaged Plaintiff "on a daily basis" and was "constantly checking on" him and making him feel uncomfortable.  (*Id.*)  On March 1,

---

[8] In the Amended Complaint, Plaintiff states that he "filed [his] EEO complaint December 14, 2018." (Am. Compl., Dkt. 10 at ECF 12.)  However, the EEOC Decision & Order on Summary Judgment indicates that though Plaintiff "initially contacted an EEO counselor on December 14, 2018," he did not file a formal complaint until March 25, 2019.  (EEOC Decision & Order on Summ. J., Dkt. 27-6 at 1.)

4

2019, Cadette, Evans, and other supervisors learned that Plaintiff had contacted the EEOC. (*Id.*) Plaintiff alleges that the supervisors' mistreatment of him began to "intensify rapidly" as a result, including an incident in which Evans "wave[d] his finger in [Plaintiff's] face and [spoke] to [Plaintiff] in an aggressive tone." (*Id.*)

On March 4, 2019, a postal customer reported that Plaintiff had sexually harassed her. (*Id.*; *see also* EEOC Decision & Order on Summ. J., Dkt. 27-6 at 6–7.) Plaintiff alleges that the customer's accusation was false, and that the customer's report was a form of retaliation against him by Cadette, Evans, and the customer. (Am. Compl., Dkt. 10 at ECF 14–15.) The USPS investigated the sexual harassment allegations. (*Id.*) As part of its investigation, the USPS placed Plaintiff on off-duty status on March 7, 2019. (*Id.*) In the weeks that followed, the USPS attempted to schedule a pre-disciplinary interview with Plaintiff multiple times, but Plaintiff did not attend the scheduled interviews. (*Id.*) A Notice of Removal was issued to Plaintiff for the alleged sexual harassment on May 14, 2019. (*Id.* at ECF 45.)

On November 5, 2019, Plaintiff's union and the USPS arbitrated the disciplinary charges stemming from the sexual harassment allegations. (*Id.* at ECF 15–16.) Plaintiff alleges that he was coerced into settling the arbitration. (*Id.* at ECF 16.) As a result of the settlement, Plaintiff received a 14-day unpaid suspension, but otherwise received backpay for all of the time he had been off-duty. (*Id.* at ECF 45.) In addition, he was transferred out of the St. Albans Station. (*Id.*)

### B. Plaintiff's Tenure at the North Richmond Hill Post Office

On April 11, 2020, Plaintiff began a new position out of the North Richmond Hill Post Office. (*Id.* at ECF 46.) Plaintiff contends that the discrimination and retaliation against him continued at North Richmond Hill. (Pl.'s Opp'n, Dkt. 29 at 12–13.) His new supervisors "micromanaged" him "everyday." (Am. Compl., Dkt. 10 at ECF 46.) These supervisors "intimidate[d]" and "harass[ed]" Plaintiff, and "continue[d] to make [his] life miserable in the

5

workplace." (*Id.*) In addition, sometime after Plaintiff moved to North Richmond Hill, one of his former supervisors, Evans, became District Area Manager. (*Id.* at 12.) In that role, Evans continued to harass Plaintiff. (*Id.*) Plaintiff believed Evans was "aware of the final notice [Plaintiff had] on [his] file and [was] doing everything in his power to terminate [Plaintiff's] job." (*Id.*)

On July 13, 2020, Plaintiff reported to Administrative Judge Robert D. Rose, who was adjudicating Plaintiff's EEOC complaint, that Evans was continuing to harass him. (Pl.'s Opp'n, Dkt. 29 at 12.) On September 23, 2020, Plaintiff received his most recent Notice of Removal. (Am. Compl., Dkt. 10 at ECF 46.) That letter was signed by Evans and another supervisor, and was mailed to Plaintiff's home while he was on vacation. (*Id.*) Plaintiff alleges that the September 23, 2020, Notice of Removal contains false information. (*Id.*)[9]

## II. Procedural History

Plaintiff filed this action on November 3, 2021, along with a motion for leave to proceed *in forma pauperis*. (Dkts. 1, 2.) The Court denied Plaintiff's motion for leave to proceed *in forma pauperis*, and Plaintiff paid the filing fee. (Dkts. 4, 5.) On December 28, 2021, the Court issued a *sua sponte* order dismissing Plaintiff's complaint for failure to state a claim and permitting Plaintiff to file an amended complaint. (Dkt. 9 at 3.) Plaintiff filed the Amended Complaint on January 26, 2022. (Dkt. 10.)

On February 7, 2022, the Court entered an Order noting that Plaintiff had not served Defendant. (2/7/2022 Dkt. Order.) The Court ordered Plaintiff to do so. (*Id.*) Plaintiff served Defendant on February 23, 2022, but failed to comply with all of the requirements of Rule 4(c). (Dkt. 11; 11/17/2022 Dkt. Order.) The Court subsequently granted Plaintiff two extensions of

---

[9] There is nothing before the Court indicating whether Plaintiff has been terminated from the USPS.

time to perfect service.  (5/26/2022 & 6/27/2022 Dkt. Orders.)  Plaintiff failed to do so.  Defendant then appeared and moved to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction, failure to state a claim, and for failure to properly serve Defendant pursuant to Rule 4(c).  (Dkts. 14–25.)  The Court granted Plaintiff a final extension of time to perfect service.  (3/13/2024 Dkt. Order.)  Plaintiff did so on May 6, 2024.  (Dkt. 26.)  Defendant then re-filed his motion to dismiss on July 8, 2024, this time seeking to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim.  (Dkt. 27.)  Defendant's motion was fully briefed on October 4, 2024.  (Dkts. 29–30.)

## LEGAL STANDARD

"When [a defendant] move[s] to dismiss under both Rule 12(b)(1) and 12(b)(6), 'the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has the subject matter jurisdiction necessary to consider the merits of the action.'"  *Piotrowski ex rel. J.P. v. Rocky Point Union Free Sch. Dist.*, 462 F. Supp. 3d 270, 282 (E.D.N.Y. 2020) (quoting *Secs. Exch. Comm'n v. Rorech*, 673 F. Supp. 2d 217, 220–21 (S.D.N.Y. 2009)).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  To survive a motion to dismiss for lack of standing, the "plaintiff must allege 'facts that affirmatively and plausibly suggest that [he] has standing to sue.'"  *Reyes v. Sofia Fabulous Pizza Corp.*, No. 13-CV-7549 (LAK) (JCF), 2014 WL 12768922, at *2 (S.D.N.Y. Apr. 7, 2014) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)), *R. & R. adopted*, 2014 WL 1744254 (S.D.N.Y. Apr. 24, 2014).  In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), courts may consider matters outside the pleadings.  *Id.*; *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) ("[W]here jurisdictional facts are placed in dispute, the court has the power and

7

obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003))).

To survive a motion to dismiss pursuant to Rule 12(b)(6), on the other hand, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted); *see also Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Bldg. Indus. Elec. Contractors Ass'n*, 678 F.3d at 187, but "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig*., 151 F. Supp. 2d at 404 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Additionally, a court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id*. at 405–06 (citing *Hirsch v. Arthur Andersen & Co*., 72 F.3d 1085, 1095 (2d Cir. 1995)).

On a Rule 12(b)(6) motion, a court must limit its inquiry to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and "documents that, while not explicitly incorporated into the complaint, are 'integral' to [the] plaintiff's claims and were relied upon in drafting the complaint." *Id.* at 404 (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991)). Thus, in employment discrimination cases, courts may consider filings with state administrative agencies or the EEOC to the extent that a complaint necessarily rests upon them. *See Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) ("'[I]t is proper for this court to consider the plaintiff's relevant filings with the EEOC' and other documents related to the plaintiff's claim . . . so long as those filings are . . . 'integral to' and 'solely relied' upon by the complaint." (quoting *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565–66 (2d Cir. 2006))).

## DISCUSSION

### I.   Materials Considered

In this case, Defendant moves to dismiss Plaintiff's defamation claim on Rule 12(b)(1) grounds, and moves to dismiss the other claims on Rule 12(b)(6) grounds. (Def.'s Mem. Supp. Mot. to Dismiss. ("Def.'s Br."), Dkt. 27-1 at 11–12.) As explained above, for the purposes of a motion to dismiss on Rule 12(b)(1) grounds, courts may consider documents outside the pleadings, such as affidavits. *Reyes*, 2014 WL 12768922, at *2; *Tandon*, 752 F.3d at 243. Consequently, for purposes of Defendant's motion to dismiss Plaintiff's defamation claim, the Court considers all of the materials submitted by the parties to the extent that they are relevant.

In contrast, with respect to Rule 12(b)(6) motions, courts are "typically confined to 'the allegations contained within the four corners of the complaint.'" *Rodriguez*, 2013 WL 4779639, at *1 (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998)). But "when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained

9

in a pro se litigant's opposition papers and other court filings." *Id.* (collecting cases). Thus, the Court considers the facts contained in the Amended Complaint, which the Court accepts as true for the purpose of Defendant's motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). In addition, the Court considers the other documents filed alongside the Amended Complaint as integral to the Complaint, *Sosa v. N.Y.C. Dep't of Educ.*, No. 18-CV-0411 (PKC) (SJB), 2020 WL 1536348, at *3 (E.D.N.Y. Mar. 31, 2020), as well as any factual allegations contained in Plaintiff's opposition papers and other filings, *Rodriguez*, 2013 WL 4779639, at *1. The Court also considers the EEOC decisions appended Defendant's moving papers because the EEOC proceeding is referenced in, and highly relevant to, Plaintiff's Amended Compliant. *Littlejohn*, 795 F.3d at 305 n.3. The Court, however, does not consider any other materials appended to Defendant's moving papers, because those materials are not incorporated by reference into the Amended Complaint or otherwise appropriate for the Court to consider at this stage of litigation. *See TileBar v. Glazzio Tiles,* 723 F. Supp. 3d 164, 188–89 (E.D.N.Y. 2024) (declining to consider appended materials that were not incorporated into the complaint on a Rule 12(b)(6) motion).

## II. Defamation Claim

Broadly construing Plaintiff's Amended Complaint, as the Court must, Plaintiff brings a state law defamation claim. (*See* Am. Compl., Dkt. 10 at ECF 14 (alleging that the retaliatory conspiracy was "an act of defamation of character"); *id.* at ECF 4 (listing "defamation of character" as one of Plaintiff's claims).) Defendant moves to dismiss this claim under Rule 12(b)(1) for lack of subject matter jurisdiction due to failure to exhaust. The Federal Tort Claims Act ("FTCA") requires individuals seeking to bring tort claims against the federal government to exhaust the claim by "first present[ing] the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a); *see also Leytman v. United States*, 832 F. App'x 720, 722 (2d Cir. 2020) (summary order) ("[A]

10

plaintiff bringing an action under the FTCA must first exhaust administrative remedies by filing a claim for monetary damages with the appropriate federal entity within two years of the injury's accrual."). "This requirement is jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 81 (2d Cir. 2005). Plaintiff has not exhausted his defamation claim. (Decl. of Kimberly A. Herbst, Dkt. 27-4 ¶ 4.) This Court thus lacks subject matter jurisdiction over Plaintiff's defamation claim. *Celestine*, 403 F.3d at 81. Consequently, Plaintiff's defamation claim is dismissed for lack of subject matter jurisdiction.

### III.    Plaintiff's Title VII Claims

#### A.    Exhaustion

Defendant also moves to dismiss for failure to exhaust (1) Plaintiff's disparate treatment claim, and (2) Plaintiff's hostile work environment claim insofar as it relates to Plaintiff's tenure at the North Richmond Hill Post Office. Plaintiffs must exhaust administrative remedies prior to bringing claims under Title VII. *Tulin v. U.S. Postal Serv.*, No. 06-CV-5067 (JS) (ARL), 2008 WL 822126, at *5 (E.D.N.Y. Mar. 25, 2008). This "administrative exhaustion requirement applies to *pro se* and counseled plaintiffs alike." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015). Specifically, 29 C.F.R. § 1614.105 requires federal employees to "consult with an Equal Employment Opportunity ('EEO') counselor within 45 days of [any] alleged discriminatory act" before bringing a lawsuit under Title VII, *Tulin*, 2008 WL 822126, at *5 (citing 29 C.F.R. § 1614.105(a)(1)), and then, if the matter is unresolved, the employee must file a formal, written complaint with the EEOC before filing a lawsuit, 29 C.F.R. §§ 1614.105(d), 1614.106; 42 U.S.C. § 2000e-16(c). However, unlike the FTCA's exhaustion requirement, Title VII's exhaustion requirement is not jurisdictional. *Fowlkes*, 790 F.3d at 384. As a result, Rule 12(b)(6)'s standards apply to Defendant's motion to dismiss Plaintiff's Title VII claims for failure to exhaust. *O'Neal*

11

*v. State Univ. of N.Y. Health Sci. Ctr. Brooklyn*, No. 01-CV-7802 (DGT), 2003 WL 1524664, at *4–5 (E.D.N.Y. Mar. 24, 2003).

In this case, Plaintiff contacted an EEO counselor twice before filing a formal complaint: first, on December 14, 2018 (Am. Compl., Dkt. 10 at ECF 12), and then again on February 14, 2019, (*id.* at ECF 13). He ultimately filed a formal complaint with the EEOC on March 25, 2019. (EEOC Decision & Order on Summ. J., Dkt. 27-6 at 1.) Though the actual complaint Plaintiff filed with the EEOC is not before the Court at this time, it is clear from the resulting EEOC decisions that Plaintiff's formal EEOC complaint centered on his concerns about an ethnicity-based[10] hostile work environment and retaliation at the St. Albans Station, where he worked at the time he made his initial report to the EEOC. (*See id.* at 4–7, 10–15; EEOC Appeal Decision, Dkt. 27-7 at 4–5.) Thus, Defendant argues, all of Plaintiff's claims relating to his work at the North Richmond Hill Post Office, and any disparate treatment claims relating to either work station, are necessarily unexhausted, and therefore must be dismissed. (Def.'s Br., Dkt. 27-1 at 13–16.)

District courts, however, may hear Title VII claims that "are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). This means that a plaintiff can bring "claims not raised in the [EEOC] charge . . . in a civil action where the conduct

---

[10] The parties, and the EEOC, refer to Plaintiff's claims alternatively as claims regarding "race" or "national origin" discrimination. (*See* Am. Compl., Dkt. 10 at ECF 6 (noting that Plaintiff was discriminated against based on his "race" and his "Hispanic" "national origin"); Def.'s Br., Dkt. 27-1 at 1 (referring to Plaintiff's claims "based on race (Hispanic) and national origin (Hispanic)"); EEOC Decision & Order on Summ. J., Dkt. 27-6 at 11 (referring to Plaintiff's "race harassment claim").) Claims of discrimination based on Hispanic ethnicity are cognizable under Title VII as race discrimination claims, even though "Hispanic" is an ethnicity, not a race. *Village of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016). In certain circumstances, claims "of discrimination based on Hispanic ethnicity . . . may *also* be cognizable under the rubric of national-origin discrimination, depending on the particular facts of [the] case." *Id.*

complained of would fall within the scope of the EEOC investigation [and] which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1402. Courts also consider unexhausted claims to be reasonably related to an exhausted claim "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge," and where a plaintiff alleges that their employer has retaliated against them for the filing of an EEOC charge. *Id.* at 1402–03. The Court therefore considers whether Plaintiff's disparate treatment claims and his claims relating to his assignment at the Richmond Hill Post Office are reasonably related to, and would have come within the scope of the EEOC's investigation of, Plaintiff's claims of ethnicity-based hostile work environment and retaliation at the St. Albans Station.

        1.      <u>Plaintiff's Disparate Treatment Claims</u>

Though the Court does not have access to Plaintiff's formal EEOC charge, it is clear from the EEOC's summary judgment decision that the EEOC interpreted Plaintiff's discrimination reports as alleging hostile work environment harassment and retaliation, not disparate treatment. (*See* EEOC Decision & Order on Summ. J., Dkt. 27-6 at 11–12.) In his response to the motion to dismiss, however, Plaintiff raises, seemingly for the first time, disparate treatment allegations. Specifically, in his opposition papers, he alleges that "Management imposed . . . unfair and disparate treatment" on him, (Pl.'s Opp'n, Dkt. 29 at 5), and that non-Hispanic carriers were treated more favorably than he was when they requested overtime, (*id.* at 7, 15), and with respect to parcel delivery on their routes, (*id.* at 12). But those allegations do not appear in any of the EEOC decisions before the Court, nor does Plaintiff allege in his Amended Complaint or moving papers

13

that he raised allegations of disparate treatment before the EEOC.[11]  (*See* EEOC Decision & Order on Summ. J., Dkt. 27-6; EEOC Appeal Decision, Dkt. 27-7; Am. Compl., Dkt. 10.)  Indeed, a close review of both the EEOC's Decision and Order on Summary Judgment and its Appeal Decision reveals no facts that would suggest that "the EEOC likely would have investigated the [disparate treatment now] complained of anyway." *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 132 (E.D.N.Y. 2002) (quoting *Pemrick v. Stracher*, 67 F. Supp. 2d 149, 170 (E.D.N.Y. 1999)).  Thus, Plaintiff's disparate treatment claim is unexhausted.  Plaintiff's disparate treatment claim is therefore dismissed.

### 2. Plaintiff's Hostile Work Environment Claims Relating to His Tenure at the North Richmond Hill Post Office

That leaves Plaintiff's allegations of a hostile work environment claim at the North Richmond Hill Post Office, which Defendant argues are also unexhausted.  The Court disagrees.  "[F]urther incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge" are reasonably related to the exhausted claims. *Butts*, 990 F.2d at 1402–03.  Here, Plaintiff alleges that one of the individuals who harassed him, Evans, was promoted to oversee the entire District Area and continued to harass Plaintiff in much the same manner as he had while supervising Plaintiff at St. Albans Station.  (Pl.'s Opp'n, Dkt. 29 at 12.)  Plus, at least some of Evans's alleged harassment of Plaintiff at the North Richmond Hill Post Office took place during the pendency of the EEOC investigation.  (*Id.*)  Indeed, construing Plaintiff's allegations liberally, as the Court must, Plaintiff alleges that on July 13, 2020, he made a complaint about Evans's ongoing harassment of him to Administrative Judge Rose, who was charged with adjudicating

---

[11] The same is true of Plaintiff's allegation that he was denied leave under the Family and Medical Leave Act, which is only mentioned in one sentence of his opposition brief.  (Pl.'s Opp'n, Dkt. 29 at 5.)

14

Plaintiff's then-pending EEO complaint. (*Id.*; *see also* EEOC Decision & Order on Summ. J., Dkt. 27-6 at 16.) Thus, the Court finds that Plaintiff's claim of hostile work environment at the North Richmond Hill Post Office is reasonably related to his exhausted hostile work environment claim relating to his tenure at St. Albans Station. The Court thus considers whether Plaintiff has sufficiently alleged claims of hostile work environment at both St. Albans Station and the North Richmond Hill Post Office under Rule 12(b)(6).

### B. Hostile Work Environment

"To establish a prima facie case of hostile work environment" under Title VII, a plaintiff must allege "that the discriminatory harassment was 'sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment,' and 'that a specific basis exists for imputing' the objectionable conduct to the employer.'" *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2005) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "It is axiomatic that the plaintiff also must show that [the] hostile conduct occurred because of a protected characteristic." *Eka v. Brookdale Hosp. Med. Ctr.*, 247 F. Supp. 3d 250, 276 (E.D.N.Y. 2017); *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 240 (E.D.N.Y. 2015) ("While a plaintiff need not present direct evidence that [they] suffered a hostile work environment on the basis of [their] protected characteristics, [they] must at least set forth circumstantial or other indirect evidence to allow the Court to conclude that [ ] any facially-neutral incidents were, in fact, discriminatory.").

Here, Plaintiff has not plausibly alleged that the hostile conduct at issue occurred because of a protected characteristic. Liberally construing Plaintiff's Amended Complaint, opposition papers, and other documents, the only allegations that suggest that any alleged bad actor was motivated by Plaintiff's ethnicity is Supervisor Cadette's comment in which she asked if Plaintiff could understand her and if she was speaking Spanish, (Am. Compl., Dkt. 10 at ECF 12), and her

15

statement that she was uncomfortable being alone with Plaintiff, (Pl.'s Opp'n, Dkt. 29 at 17). These comments alone are insufficient to establish a connection between the alleged harassment that Plaintiff experienced—which he claims was inflicted upon him by a series of different supervisors—and his ethnicity. Indeed, Cadette's comment in which she asked Plaintiff whether she was speaking Spanish seems to suggest that she believed Plaintiff *does not* understand Spanish, not that he could not understand English. And, even if the Court were to construe this comment as discriminatory, this would amount to "the classic 'stray remark' which, standing alone, will not support a discrimination or hostile work environment claim." *Rivera v. Brooklyn Hosp. Med. Ctr.*, 28 F. Supp. 3d 159, 163 (E.D.N.Y. 2014) (citing *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)). The same is true for Cadette's other comment that she was uncomfortable being alone with Plaintiff, which, standing alone, does not raise a plausible inference of ethnicity-based discriminatory animus.

Similarly, Plaintiff's remaining hostile work environment allegations do not evince any ethnicity-based animus. Indeed, most of Plaintiff's Amended Complaint focuses on instances of the USPS addressing performance-related issues, which Plaintiff does not allege are ethnicity-related, except for asserting that he "felt like discrimination was a factor." (*See, e.g.*, Am. Compl., Dkt. 10 at ECF 10–12.) This type of conclusory allegation of discrimination does not raise an inference that the alleged mistreatment was based, even in part, on Plaintiff's ethnicity.

The same is true for the remainder of Plaintiff's allegations, (*see e.g.*, Am. Compl., Dkt. 10 at ECF 13 (alleging that Cadette's manner is "completely different" towards him as compared to others and that she "harass[ed him] throughout the station"); *id.* at ECF 14 (alleging that Evans "micromanag[ed Plaintiff] on a daily basis"); *id.* at ECF 46 (alleging that at the North Richmond Hill Post Office, Plaintiff has been "micromanaged everyday")), which are vague and conclusory,

16

and therefore fail to show a hostile work environment, *see Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 158 (E.D.N.Y. 2015) (finding plaintiff's conclusory allegations that she suffered "disrespectful treatment, retaliation and harassment" insufficient to plead hostile work environment claim); *Fields v. N.Y.C. Health & Hosp. Corp.*, No. 17-CV-6042 (PKC) (CLP), 2018 WL 4407432, at *2 (E.D.N.Y. Sept. 17, 2018) (holding plaintiff did not state a claim for hostile work environment where she made vague allegations about enduring "verbal abuse" and an environment "permeated with discriminatory intimidation, ridicule, and insult"); *Rivera*, 28 F. Supp. 3d at 163 (holding that plaintiff could not state a claim for hostile work environment where "[t]here [was] only one remark that referenced his ethnic origin in the entirety of his hostile work environment allegations"). Thus, Plaintiff's hostile work environment claim is dismissed for failure to state a claim pursuant to Rule 12(b)(6).

### C. Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must show: (1) "participation in a protected activity"; (2) "the defendant's knowledge of the protected activity"; (3) "an adverse employment action"; and (4) "a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). Once the plaintiff has established their prima facie case, the burden shifts to the employer to articulate a nonretaliatory reason for the adverse action. *Id.* at 845. Upon the employer's showing, the burden shifts back to the plaintiff to bring forth evidence establishing that the nonretaliatory reason is "pretext for retaliation." *Id.*

Here, Plaintiff claims that the customer's report that he sexually assaulted or otherwise sexually harassed her was part of a conspiracy to retaliate against him for his EEO complaint. (Am. Compl., Dkt 10 at ECF 14.) Specifically, Plaintiff asserts that the customer who made the

report conspired with Supervisors Evans and Cadette to falsely accuse him of sexual harassment. (*Id.*) The customer reported the sexual harassment allegations in early March 2019, just a few days after Evans and Cadette spoke with an EEO officer regarding Plaintiff's reports of discrimination, which Plaintiff alleges raises an inference that the customer participated in a retaliatory scheme to conspire against him. (*Id.*) Beyond this timing, however, Plaintiff does not allege any other non-conclusory facts that would tend to suggest that Evans or Cadette caused the sexual harassment report to be made. (*See generally id.*; Pl.'s Opp'n, Dkt. 29.) For example, Plaintiff does not allege that the customer was aware of Plaintiff's discrimination complaints, that she knew either Evans or Cadette, or that she had some other motive to retaliate against him. (*See* Am. Compl., Dkt. 10; Pl.'s Opp'n, Dkt. 29.) Consequently, the Court does not find Plaintiff's allegation that the customer participated in a retaliatory conspiracy to be plausible.

Given the overall implausible and conclusory nature of Plaintiff's retaliation allegations, the timing of the sexual harassment complaint alone is not enough to render the alleged retaliation conspiracy plausible. *See Jackson v. County of Rockland*, 450 F. App'x 15, 18–19 (2d Cir. 2011) (summary order) (affirming dismissal of "implausible" retaliation claim based in part on "bald assertions of" "conspiratorial" conduct); *see also De La Pena v. Metro. Life Ins. Co.*, 552 F. App'x 98, 100 (2d Cir. 2014) (summary order) (affirming dismissal of discrimination claim where Plaintiff did not "allege facts showing a plausible inference of discrimination"). Plaintiff's retaliation claim is therefore dismissed.

## IV.     Leave to Amend

This Court is mindful that "[d]istrict courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summary order). Here, the Court previously granted Plaintiff leave to amend his complaint. (Dkt. 9.) Moreover, the Court does not find that Plaintiff "has a claim that []he has inadequately

18

or inartfully pleaded and that []he should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Therefore, his Amended Complaint is dismissed in its entirety without leave to amend.

## CONCLUSION

For the reasons explained above, the Court grants Defendant's Motion to Dismiss and dismisses all claims in the Amended Complaint.[12] The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: December 12, 2024
       Brooklyn, New York

---

[12] Plaintiff's Amended Complaint lists a claim for "violation of zero tolerance policy." (Am. Compl., Dkt. 10 at ECF 6.) The Court is not familiar with any such legal claim that would be relevant to the facts at issue here, and therefore does not further address this claim.